## SCHWIETER

v.

## HEATHMAN'S ESTATE.

No. 28756.

St. Louis Court of Appeals.

Missouri.

Feb. 16, 1954.

Not to be reported in State Reports.

Bollow & Crist, Shelbina, for appellant.

Don C. Carter, Sturgeon, for respondent.

WOLFE, Commissioner.

This case originated in the Probate Court of Monroe County and was certified to the circuit court when the plaintiff filed an affidavit disqualifying the probate judge. It is a claim by the plaintiff for the amount spent by him for the support of his stepson. The stepson was the natural son of Ercil Heathman, now deceased, and the plaintiff seeks recovery against Heathman's estate

for money expended in part support of the boy during his minority. The trial was to the court and there was a finding and judgment for the defendant, from which the plaintiff has appealed.

The cause before us is one of two actions brought against the Heathman estate to recover sums expended in part support of Heathman's son. The other action was brought by the natural mother of the son and the cases were tried together. There was a finding and judgment in favor of the mother, from which no appeal was taken.

It appears that Ercil P. Heathman, against whose estate this claim is asserted, married Isabella Hanger and a son was born of the marriage on November 12, 1930. On June 6, 1931, Mr. and Mrs. Heathman separated, and on November 27, 1934, Heathman was granted a decree of divorce in an action brought by him and not contested. The child, named David, remained with his mother but the decree of divorce made no order respecting his custody or support.

After the separation of the Heathmans, Mrs. Heathman and her child lived with her parents on a farm in Shelby County. Mrs. Heathman did work about the farm for which she was paid by her father. When her son was four years old her mother died and Mrs. Heathman remained with her father, taking care of the home, the poultry, and doing other chores that fall to the lot of women on small farms. She never received any aid from Heathman for the support of their son and bore all the expenses of his maintenance until the boy was about eight years of age. In 1938, Mrs. Heathman was being courted by Shelby Schwieter, plaintiff in this case, and she married him on April 8, 1939.

Mrs. Schwieter testified that prior to her marriage to Schwieter he got to know her son very well and played with him every time he visited her. She said that Schwieter loved her son as much as if he were his own and that when they were married he took the boy into their home as a member of the family. She said that the treatment accorded David was the same as that accorded his half sister, who was born of the Schwieter union, and that Schwieter referred to him as "my boy".

Schwieter's testimony was to the same effect and he stated that when he and Mrs. Schwieter were married he loved David and intended to take him into his home and to support him as he would his own child. He did this up to the time David went into the Army and at the time of trial David was twenty-one years old.

Ercil P. Heathman, David's natural father, died on July 6, 1950. Schwieter by this action seeks to recover from Heathman's estate the amount he expended in support of David over a period of eleven years and two months. He places the sum at $2,700.

The trial court found that Schwieter had taken David into his home as one of his family, with no intention to make any charge against the child or anyone for his support and that he could not now recover against the Heathman estate. It is from the resulting judgment for the defendant that Schwieter appeals.

■ The question presented is whether a stepfather, who undertakes to provide for his stepchild without any intention of making a charge against anyone for such support, may thereafter recover from the natural father the value of the support furnished. The appellant asserts that the natural father has the primary obligation to support his minor child and that others furnishing the child with necessaries may recover from the father. This, as a general proposition, is the well-established law. Winner v. Schucart, 202 Mo.App. 176, 215 S.W. 905; McCloskey v. St. Louis Union Trust Co., 202 Mo.App. 28, 213 S.W. 538; Kelly v. Kelly, 329 Mo. 992, 47 S.W.2d 762, 81 A.L.R. 875. Conversely, the respondent contends that the liability shifts to the stepfather when he assumes the position of a parent of the stepchild and that as he stands in loco parentis he is obliged to bear the cost of the child's maintenance himself. We are cited to St. Ferdinand Loretta

934

Academy v. Bobb, 52 Mo. 357, loc. cit. 360, wherein it is said:

> "There is no obligation on the part of the stepfather to provide for the children of his wife by a former husband, by virtue merely of his marriage with their mother. He may refuse to provide for them, and could not be compelled to do so. The liability in such cases depends upon the relation he chooses to assume in reference to them. If he holds them out to the world as members of his family, he stands *in loco parentis* and incurs the same liability with respect to them, that he is under to his own children."

Of similar import are the cases of Hennessy v. Bavarian Brewing Co., 145 Mo. 104, 46 S.W. 966, 41 L.R.A. 385; Eickhoff v. Sedalia, W. & S. W. Ry. Co., 106 Mo. App. 541, 80 S.W. 966; In re Stevens' Estate, Mo.App., 116 S.W.2d 527. None of these cases, however, has to do with a stepfather asserting a claim against the natural father. It is maintained by appellant that the stepfather is in the same position as any third party who furnishes necessaries to an abandoned minor child, and that he may recover from the natural parent.

■ The right of any third party to recover rests upon an actual agreement or one implied by law for the fulfillment of the natural father's duty to his child. Rankin v. Rankin, 83 Mo.App. 335, loc. cit. 341; Kelly v. Kelly, 329 Mo. 992, 47 S.W.2d 762. Thus, where a third party does not rely upon the father for reimbursement for the necessaries furnished and gives them as a gratuity, the law will imply no agreement for none was intended.

As stated in 67 C.J.S., Parent and Child, § 16, p. 701:

> "Where a child has resided with relatives or others who have voluntarily supported it and who have not demanded payment for its support or that the parent take it back or provide for it elsewhere, such persons cannot recover from the parent for past support of the child."

■ The mere fact that a stepfather stands in loco parentis to a child would not of itself bar him from the recovery sought here if he assumed the duties of parent and provided for the child with the intention of recovery from its natural parent. But, as stated in 67 C.J.S., Parent and Child, § 73, p. 806:

> "* * * a person standing in loco parentis * * * cannot, while such relation exists, be allowed to assert a claim for the support of the child to whom he stands in such relation, in the absence of an express or implied understanding that he is to be compensated therefor."

■ In support of his right to recover, the plaintiff relies chiefly upon our case of In re Hartle's Estate, Mo.App., 236 S.W.2d 40. That was an action wherein the natural mother and stepfather joined as plaintiffs in a suit against the natural father's estate for the support of his child and recovery was had. Whether or not the stepfather was the proper party to that action was not before us, as the only point raised was the sufficiency of the evidence to show the amount expended for the child's maintenance. It may well be that the stepfather in that case had such a right, for, as pointed out above, the mere fact that the claimant is a stepfather does not in itself divest him of a right to charge the support of the stepchild to its natural father. The rule is that no liability attaches to the father for necessaries furnished his minor child whom he has abandoned, where the support has been assumed by others as a purely voluntary undertaking without any regard to the duty on the father's part. 67 C.J.S., Parent and Child, § 16, p. 701.

■ The plaintiff was under no legal obligation to support the stepson, but he did so because he loved him and desired to treat him as his own. He made no demand upon the natural father and all the evidence indicates that he intended the support that he gave to be nothing more than a gratuity. The trial court properly concluded that he could not recover.

For the reasons stated, it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., and RUDDY and BENNICK, JJ., concur.